IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| United States of America<br><br>v.<br><br>Sonny Lavoris Mack | Crim. No. 4:08-cr-01252-TLW-1<br><br>**Order** |

This matter is before the Court for consideration of an objection raised by Defendant Sonny Lavoris Mack at his supervised release revocation hearing regarding the appropriate grade of the sole violation in his Supervised Release Violation Report (SRVR). For the reasons discussed below, his objection is overruled.

As background, Mack pled guilty to a drug conspiracy charge and was sentenced to 240 months incarceration, followed by a 10-year term of supervised release.[1] ECF No. 160. His sentence was later reduced to 180 months after the Court granted the Government's Rule 35(b) motion, and then further reduced to 132 months after the Court granted his motion pursuant to Amendment 782 to the Guidelines. ECF Nos. 243, 249. He was released from custody on January 11, 2019.

Less than one year later, the Court ordered the issuance of a supervised release revocation warrant after Probation notified the Court of Mack's arrest by state

---

[1] He was originally designated a career offender and sentenced to 264 months. ECF No. 130. While his case was on direct appeal, the Fourth Circuit issued its decision in *United States v. Rivers*, 595 F.3d 558 (4th Cir. 2010), which changed the law regarding the evaluation under the Guidelines of one of his prior convictions. As a result of *Rivers*, his case was remanded for resentencing without the career offender designation, resulting in the above sentence.

1

authorities on a charge of Assault and Battery, 1st Degree (A&B 1st), in violation of S.C. Code Ann. § 16-3-600(C). The conduct that resulted in that charge formed the basis of the sole violation alleged in the SRVR, which Probation classified as a Grade A violation. SRVR ¶ 1. Because his underlying federal conviction is for a Class A felony and his criminal history category is V, Probation concluded that his Guidelines range is 46 to 57 months incarceration. SRVR ¶ 12; U.S.S.G. § 7B1.4(a)(2).

The Court held a supervised release revocation hearing on October 27, 2020. During the contested hearing, the Court heard testimony and considered evidence presented, including videos, images, and medical records. After careful consideration of this testimony and evidence, the Court concluded that Mack committed the conduct alleged in the SRVR.

However, prior to the Court imposing sentence, Mack raised a new argument—that his conduct amounted to a Grade B violation, rather than a Grade A violation. If successful in this argument, his Guidelines range would be reduced to 18 to 24 months incarceration. U.S.S.G. § 7B1.4(a). The Court heard argument from counsel on the issue, but because it had not been briefed, the Court continued the hearing and directed the parties to brief the issue. They have since done so and the issue is now ripe for adjudication. ECF Nos. 329, 330.

The Guidelines range of imprisonment upon revocation for a supervised release violation depends on the defendant's criminal history category and the grade of the violation (and, for a Grade A violation, whether the underlying conviction was

for a Class A felony).² U.S.S.G. § 7B1.4(a).

A Grade A violation is defined, in relevant part, as "conduct constituting [ ] a federal, state, or local offense punishable by a term of imprisonment exceeding one year that [ ] is a crime of violence." U.S.S.G. § 7B1.1(a)(1)(A)(i). A Grade B violation is defined simply as "conduct constituting any other federal, state, or local offense punishable by a term of imprisonment exceeding one year." U.S.S.G. § 7B1.1(a)(2). As implied by the phrase "conduct constituting," "the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1 cmt. n.1.

Determining whether a defendant facing a supervised release revocation has committed a Grade A or B violation is a three-step process:

- First, the district court makes the factual determination of what "actual conduct" the defendant engaged in.³ *Id.*

- Second, the district court makes the legal determination of whether that conduct "constitute[es]" a "federal, state, or local offense," and if so, what particular offense. U.S.S.G. §§ 7B1.1(a)(1), (2).

- Third, the district court makes the legal determination of whether that particular offense meets at least one of the specific subsections listed in § 7B1.1(a).

In this case, there is only one potentially-applicable subsection—"a crime of violence."⁴ U.S.S.G. § 7B1.1(a)(1)(A)(i). The Guidelines define "crime of violence," in

---

² There is no dispute that Mack's underlying conviction is for a Class A felony and his criminal history category is V. PSR ¶ 54.

³ Where the violation is not contested, this will often be accomplished by adopting the facts set forth in the SRVR. But where the violation is contested, as it was here, the district court is required to make a factual determination about what occurred.

⁴ The other subsections are controlled substance offenses, certain offenses involving firearms or destructive devices, and other offenses punishable by more than twenty

3

relevant part, as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that [ ] has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1); *see also* U.S.S.G. § 7B1.1 cmt. n.2 (incorporating § 4B1.2's definition). "[T]he phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010). This aspect of the crime of violence definition is known as the force clause.

Generally, to determine whether an offense is a crime of violence, a district court applies the categorical approach. *See United States v. Simmons*, 917 F.3d 312, 316 (4th Cir. 2019). "Under this approach, if the offense can be committed without satisfying the definition of crime of violence, then it is overbroad and not a categorical match." *Id.* at 316–17 (citation omitted). That is, even the most innocent conduct criminalized by the statute must match or be narrower than the definition of crime of violence. *See United States v. Salmons*, 873 F.3d 446, 448 (4th Cir. 2017). In making this determination, a district court "must rely on the interpretation of the offense rendered by the courts of the state in question." *United States v. Burns-Johnson*, 864 F.3d 313, 316 (4th Cir. 2017).

Sometimes, however, determining whether an offense is a crime of violence requires application of the modified categorical approach. If a statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," the statute is divisible. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). When faced with a divisible

---

years incarceration. U.S.S.G. §§ 7B1.1(a)(1)(A)(ii), (A)(iii), (B).

4

statute, a district court applies the modified categorical approach. *Id.* "Under that approach, a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* Then, once the specific offense has been determined, the district court must "apply the categorical approach only to that offense" to determine whether it is a crime of violence. *United States v. Doctor*, 958 F.3d 226, 238 (4th Cir. 2020).

But in the revocation context, the modified categorical approach applies differently because "the grade of the violation is to be based on the defendant's actual conduct." U.S.S.G. § 7B1.1 cmt. n.1. Thus, to determine which particular offense the defendant committed in that divisible statute, a district court must look to his actual conduct, rather than any so-called *Shepard* documents.[5] But once the district court identifies the particular offense within that divisible statute, the district court applies the categorical approach to that particular offense, "look[ing] only to the elements of [that offense] and not the particular facts of [his] case." *Simmons*, 917 F.3d at 317.

The Court now turns to the application of those principles to this case.

The first step—the factual determination of what "actual conduct" Mack engaged in—was resolved at the initial hearing. After considering the evidence and argument presented, the Court concluded that he engaged in an unjustified, merciless beating of the 72-year-old victim that caused him serious injuries. After Mack knocked the victim to the floor, Mack repeatedly kicked the victim in the face while

---

[5] *Shepard v. United States*, 544 U.S. 13 (2005).

5

he was on the ground. This beating resulted in substantial blood loss, reflecting the significant, painful injuries suffered by the victim, including to his face and permanent damage to his blackened, swollen-shut eye. Mack asserted that the victim had a knife, but no evidence supported that accusation and the Court concluded that Mack's accusation was not credible.

The second step—the legal determination of whether Mack's actual conduct constituted a federal, state, or local offense, and if so, what offense—was also resolved at the initial hearing. The Court concluded that Mack's conduct constituted an A&B 1st offense, which carries a statutory maximum of ten years incarceration. S.C. Code Ann. § 16-3-600(C)(2).

The third step—the legal determination of whether A&B 1st is a crime of violence—requires further analysis. First, the Court turns to the A&B 1st statute itself:

> A person commits the offense of assault and battery in the first degree if the person unlawfully:
>
>     (a)    injures another person, and the act:
>
>         (i)    involves nonconsensual touching of the private parts of a person, either under or above clothing, with lewd and lascivious intent; or
>
>         (ii)    occurred during the commission of a robbery, burglary, kidnapping, or theft; or
>
>     (b)    offers or attempts to injure another person with the present ability to do so, and the act:
>
>         (i)    is accomplished by means likely to produce death or great bodily injury; or
>
>         (ii)    occurred during the commission of a robbery,

> burglary, kidnapping, or theft.

S.C. Code Ann. § 16-3-600(C)(1). Under this statute, there are four ways an individual can commit A&B 1st:

1. by injuring another person with an act involving certain nonconsensual touching with a particular intent—§ 16-3-600(C)(1)(a)(i);

2. by injuring another person with an act occurring during a robbery, burglary, kidnapping, or theft—§ 16-3-600(C)(1)(a)(ii);

3. by offering or attempting to injure another person by means likely to produce death or great bodily injury[6]—§ 16-3-600(C)(1)(b)(i); or

4. by offering or attempting to injure another person during a robbery, burglary, kidnapping, or theft—§ 16-3-600(C)(1)(b)(ii).

The Court concludes that this statute "list[s] elements in the alternative, and thereby define[s] multiple crimes," and thus, the modified categorical approach applies. *Mathis*, 136 S. Ct. at 2249; *see also United States v. Butler*, 760 F. App'x 194, 196–97 (4th Cir. 2019) (applying the modified categorical approach to A&B 2nd in light of the parties' agreement on that approach).

Because the modified categorical approach applies in this revocation context, the Court considers Mack's actual conduct to determine which of these four subsections he violated. The Government argues, and the Court agrees, that his conduct constitutes a violation of § 16-3-600(C)(1)(b)(i)—an attempt to injure another person by means likely to produce death or great bodily injury. *See* ECF No. 330 at 5. As noted above, the Court made the factual determination that Mack brutally beat

---

[6] "Great bodily injury" is "bodily injury which causes a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of a bodily member or organ." S.C. Code Ann. § 16-3-600(A)(1).

the 72-year-old victim, including repeatedly kicking him in the face after knocking him to the ground, and that this beating resulted in significant, painful injuries to the victim, including facial injuries and ongoing vision impairment. There is no doubt that this conduct constituted an attempt to injure another person with an act that was likely to—and did—produce great bodily injury, as defined by § 16-3-600(A)(1).

Having concluded that Mack's actual conduct constitutes a violation of § 16-3-600(C)(1)(b)(i), the Court returns to the categorical approach to determine "if the offense can be committed without satisfying the definition of crime of violence." *Simmons*, 917 F.3d at 316–17 (citation omitted). That is, the Court must determine if it is possible to "offer[ ] or attempt[ ] to injure another person . . . by means likely to produce death or great bodily injury," S.C. Code Ann. § 16-3-600(C)(1)(b)(i), without "us[ing], attempt[ing to] use, or threaten[ing to] use [ ] physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). The Court concludes that it is not.[7]

The Fourth Circuit's decision in *Butler* provides significant support for this conclusion. In *Butler*, the defendant had two prior convictions for A&B 2nd, which is structured similarly to A&B 1st.[8] *See* 760 F. App'x at 195. Specifically, his convictions were for violating § 16-3-600(D)(1)(a), which provides that a person commits A&B 2d if he "unlawfully injures another person, or offers or attempts to injure another

---

[7] The Court is mindful that although the focus is "on the minimum conduct required to sustain a conviction for the state crime, . . . there must be a realistic probability, not a theoretical possibility, that a state would actually punish that conduct. *United States v. Doctor*, 842 F.3d 306, 308 (4th Cir. 2016) (citations omitted).

[8] Notably, A&B 2nd is a lesser-included offense of A&B 1st. S.C. Code Ann. § 16-3-600(D)(3).

8

person with the present ability to do so, and [ ] moderate bodily injury to another person results or moderate bodily injury to another person could have resulted." The Fourth Circuit concluded that these offenses were categorically crimes of violence under the force clause because "the requirement of 'moderate bodily injury' suggests a quantum of force commensurate with the 'physical force' requirement articulated in *Johnson*" and there is not a realistic probability that South Carolina would punish either de minimis force or reckless conduct as A&B 2nd. *Butler*, 760 F. App'x at 197.

Further guidance on this issue has recently been provided by South Carolina's intermediate appellate court, which this Court "must rely on" when interpreting the A&B 1st statute. *Burns-Johnson*, 864 F.3d at 316. In *State v. McGowan*—issued just last year—the South Carolina Court of Appeals evaluated the mens rea required to sustain a conviction for § 16-3-600(C)(1)(b)(i)—the same offense that Mack committed. 845 S.E.2d 503, 506 (S.C. Ct. App. 2020). The court held that a defendant does not violate this subsection unless he specifically intended to injure the victim. *Id.* at 506–07. The South Carolina Court of Appeals' conclusion that A&B 1st requires specific intent confirms the Fourth Circuit's prior conclusion in *Butler* that there is not a realistic possibility that South Carolina courts would punish reckless conduct as A&B 2nd.

In light of *Butler* and *McGowan*, the Court readily concludes, based on this caselaw and the analysis set forth, that § 16-3-600(C)(1)(b)(i) is categorically a crime of violence under § 4B1.2(a)(1). One cannot "offer[ ] or attempt[ ] to injure another person . . . by means likely to produce death or great bodily injury," S.C. Code Ann.

9

§ 16-3-600(C)(1)(b)(i), without "us[ing], attempt[ing to] use, or threaten[ing to] use [ ] physical force against the person of another," U.S.S.G. § 4B1.2(a)(1). The Fourth Circuit has previously determined that the level of force necessary to satisfy A&B 2nd's "moderate bodily injury" requirement is sufficient to meet *Johnson*'s requirement of "force capable of causing physical pain or injury." *Butler*, 760 F. App'x at 196–197 (citing *Johnson*, 559 U.S. at 140). Thus, it is clear, and proper to conclude, that the level of force necessary to satisfy A&B 1st's higher injury requirement—"death or great bodily injury"—is also sufficient to meet *Johnson*'s force standard. It is also clear that A&B 1st requires a mens rea of specific intent, not mere negligence or recklessness.[9] Thus, § 16-3-600(C)(1)(b)(i) is a crime of violence under § 4B1.2(a)(1).

Because Mack's conduct "constitut[es] [ ] a . . . state . . . offense punishable by a term of imprisonment exceeding one year that [ ] is a crime of violence," it is a Grade A violation. U.S.S.G. § 7B1.1(a)(1)(A)(i). Accordingly, his objection to his violation being classified as a Grade A violation is **OVERRULED**. As Probation properly determined, due to his underlying federal conviction being for a Class A felony and his criminal history category being V, his Guidelines imprisonment range is 46 to 57 months. U.S.S.G. § 7B1.4(a)(2).

---

[9] The Supreme Court is currently considering whether a mens rea of recklessness satisfies the Armed Career Criminal Act's similar definition of violent felony. *United States v. Borden*, No. 19-5410 (Sup. Ct. argued Nov. 3, 2020). The outcome of *Borden* will not impact this case due to A&B 1st's mens rea requirement of specific intent.

**IT IS SO ORDERED**.

                                             *s/ Terry L. Wooten*
                                             Terry L. Wooten
                                             Senior United States District Judge

April 12, 2021
Columbia, South Carolina